FIRST DIVISION
DECEMBER 01, 2008

No. 1-07-2787

| | | |
|---|---|---|
| LARRY FILLIUNG and RYAN HAYES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| CAROL L. ADAMS, in her official capacity as | ) | |
| Secretary of Department of Human | ) | |
| Services, THE DEPARTMENT OF HUMAN | ) | No. 05 CH 15282 |
| SERVICES, MICHAEL S. PELLETIER, in his | ) | |
| official capacity as the Elgin Mental Health Center | ) | |
| Facility Director, and DENNIS H. HEADLEY, in | ) | |
| his official capacity as Elgin Forensic Program | ) | |
| Director, | ) | Honorable |
| | ) | Mary Anne Mason, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiffs are committed to a mental health unit for the criminally insane, that is part of the

Elgin Mental Health Center, in Elgin, Illinois. They filed this suit to challenge certain policies at

the mental health center that affect their access to and possession of property and funds. The trial

court granted defendants' motions for summary judgment and to strike portions of plaintiffs'

motion for summary judgement. For the reasons discussed below, we affirm.

BACKGROUND

Parties

The two plaintiffs in this action, Larry Filliung and Ryan Hayes, were both committed to the custody of the Illinois Department of Human Services (the Department) after a finding by a criminal court that they were not guilty by reason of insanity. Although both plaintiffs were adjudicated criminally insane, neither plaintiff has a court-appointed guardian to manage his personal funds or property. Both plaintiffs are confined by the Department to the Pinel Unit at the Elgin Mental Health Center (Elgin), a mental health facility operated by the State of Illinois and located in Elgin, Illinois. The Pinel Unit is a forensic treatment program with approximately 40 patients.

The complaint stated that plaintiffs Filliung and Hayes sued "individually and on behalf of all others similarly situated." In addition, the complaint referred several times to "members of the plaintiff class." However, the suit was never certified as a class action, and thus these two plaintiffs are the only plaintiffs in this action.

The defendants in this action are the Illinois Department of Human Services and three officials of the Department. The three officials are: (1) Carol Adams, secretary of the Department; (2) Michael S. Pelletier, facility director at Elgin, who has been replaced by Charles Hoffman; and (3) Dennis H. Headley, director of the forensic program at Elgin.

Complaint

The complaint, filed September 8, 2005, contained five counts, alleging : (1) improper promulgation of certain policies at Elgin, in violation of the Illinois Administrative Procedure Act

(5 ILCS 100/1-1 et seq. (West 2006)); (2) restrictions on Elgin patients in violation of section 2-104 of the Mental Health and Developmental Disabilities Code, the statute governing possession of personal property by patients in a mental health facility (405 ILCS 5/2-104 (West 2006)); (3) violations of the first amendment right of freedom of speech (U.S. Const. amend. 1) due to Elgin's restrictions on patients' access to film and music recordings; (4) various statutory violations due to Elgin's restrictions on patents' film and music access, and on patients' ability to make purchases; and (5) violation of Section 2-105, the statute permitting a mental health patient to " use his money as he chooses" (405 ILCS 5/2-105 (West 2006)).

Only four counts are now at issue, because plaintiffs dropped the constitutional claim on appeal. Plaintiffs' appellate brief stated: "Count III has been conceded by the Plaintiffs, and is not a subject of this appeal."

The target of these four counts were two written policies in the "Elgin Mental Health Center Manual." Policy 2105 forbid patient access to films and music that were violent, racist or sexually explicit; and Policy 5125 required a cashless system of debit cards and checks for its forensic patients.

With respect to "the practice in place" concerning Policy 2105, the complaint alleged, among other things, that it "restrict[ed] a patient's access, possession and use of facility-owned and patient-owned video films and music compact discs [CDs]." Policy 2105 was entitled "Video Films/Compact Discs"; and it governed both (1) the purchase of film and music recordings by the facility, and (2) the ability by staff, patients or anyone else to bring such recordings into the facility. The policy prohibited the purchase by the facility of compact discs "that include or

3

promote vulgar language, racism, violence or anti-social behavior." For films not owned by the facility, the policy prohibited films rated R or X.

With respect to "the practice in place" concerning Policy 5125, the complaint alleged, among other things, that patients were required "to bring a picture and description of the object they wish to buy to the unit manager when requesting his or her signature on a withdrawal authorization slip"; that the unit managers could thus "make a personal judgment" about the item that the patient wished to buy; and that the unit managers could decline to sign a withdrawal slip if the patient did not present a picture of the intended item.

Policy 5125 was entitled "Patient Trust Fund" and governed the use by a patient of his or her funds while he was at the facility. For patients in the forensic treatment program, the policy provided for a cashless system using only debit cards and checks. After depositing funds into his patient trust fund, the patient received a debit card that he could use to make purchases at the facility. When the patient wished to mail a check to purchase an item from outside the facility, he completed a withdrawal slip that was then signed by an employee designated to authorize such withdrawals. The check was then "mailed directly from the Trust Fund by the Trust Fund staff." If the patient wanted "the correspondence to remain unimpeded, private and uncensored," then he could place the correspondence in a sealed envelope attached to the withdrawal slip. The trust fund staff would then mail the sealed envelope with the check in another envelope. Policy 5125, as written, did not require a picture.

The events giving rise to this lawsuit, as alleged in the complaint, include Elgin's refusal: (1) to rent the films "Waking Life," rated R, and "Ghost in the Shell II," a Japanese anime film,

4

rated PG-13; (2) to purchase the film "Million Dollar Baby," rated PG-13; (3) to approve a withdrawal form for plaintiff Filliung to buy a pair of juggling balls because he did not provide a picture of the balls; and (4) to approve a withdrawal form for plaintiff Hayes to buy a music compact disc by the band "Iron Maiden."

New Regulation

Effective December 27, 2006, the Department promulgated a new administrative regulation entitled "Personal Property in State Mental Health Facilities." 59 Ill. Adm. Code § 110.30, added at 31 Ill. Reg. 412, eff. December 27, 2006.[1] The trial court offered plaintiffs the opportunity to amend their complaint, but plaintiffs declined. Thus, none of the allegations of the complaint are directed against the new regulation.

On May 5, 2006, defendants filed an amended answer to include an affirmative defense of mootness. Plaintiffs chose not to file a reply.

The new Department-wide regulation superceded both the Elgin policies challenged in this lawsuit. In their appellate brief, defendants stated that the new regulation superceded both Policy 2105 and Policy 5125, and that these two policies were no longer in effect at Elgin. In their appellate brief, plaintiffs did not claim otherwise.

Among other things, the new regulation authorizes a mental health facility to offer a debit

---

[1]The regulation was first added by emergency rulemaking, effective July 31, 2006, for a maximum of 150 days. 30 Ill. Reg. 13527. It was then added permanently, effective December 27, 2006. 31 Ill. Reg. 412.

card, requires individual patients to complete a withdrawal form in order to gain use of the funds in their individual accounts, prohibits the categorical restriction of films based on their Motion Picture Association rating, and allows possession of film and music recordings without restriction, unless an individualized clinical judgment is made to the contrary. 59 Ill. Adm. Code §110.30, added at 31 Ill. Reg. 412, eff. December 27, 2006. The new regulation states that it "applies to all adult individuals admitted to a Department mental health facility." (Emphasis added.) 59 Ill. Adm. Code §110.30 (f), added at 31 Ill. Reg. 412, eff. December 27, 2006.

Plaintiffs' Motion for Summary Judgment

On May 17, 2007, plaintiffs filed a motion for summary judgment, written by law students and their supervising attorneys. The motion sought summary judgement, in part, based on numerous events and transactions not alleged in the complaint, and many of which occurred after the complaint was filed. The motion also sought summary judgment, in part, based on events and transactions involving a patient other than the two plaintiffs named in the complaint.

Events occurring after the filing of the complaint on September 5, 2005, included:

(1) on April 16, 2006, plaintiff Filliung was not allowed to give items to his family during a family visit, because of a "new policy" that had gone into effect;

(2) "[o]n *** April 6, 2006, Elgin adopted a practice that prevents patients from using bags in the facility unless they are involved in an educational course" and plaintiff Filliung "was placed on restriction for carrying a bag off the unit";

(3) on January 22, 2006, Elgin confiscated a "Nine Inch Nails CD" ordered by plaintiff Filliung and held it until December 2006;

6

(4) on March 27, 2007, plaintiff Filliung was not able to withdraw $10 in cash; and

(5) on September 28, 2006, Elgin patients received "a copy of the Contraband and Restricted items list" which included computers with "built-in wireless cards," and as a result, plaintiff Filliung could not use a laptop computer that he had ordered in July 2006.

The motion also sought summary judgment based on events concerning James Baker, an Elgin patient in the Hartman Unit, which is a different unit than the one in which plaintiffs are confined. Baker has never been named as a plaintiff in this suit. The motion claimed that Baker was not allowed to withdraw funds from his account, to keep cash on his unit, or to possess a wireless computer.

Defendants' Motions to Strike and for Summary Judgment

Defendants moved for summary judgment and to strike portions of plaintiffs' motion for summary judgment. On May 17, 2007, defendants moved for summary judgment on the grounds: (1) that the new regulation had mooted the claims asserted in the last four of the five counts of the complaint; (2) that plaintiffs' claims "under the APA in Count I fail as a matter of law"; and (3) that plaintiffs' claims "regarding facility-owned property purchased or rented by [Elgin] for facility-wide use in Counts II and III also fail as a matter of law."

On June 7, 2007, defendants' moved to strike the portions of plaintiffs' motion for summary judgment that alleged "new factual allegations and claims for relief that were not asserted in Plaintiffs' Complaint and, for the most part, were not developed by Plaintiffs during discovery."

No. 1-07-2787

                    Trial Court's Ruling

On September 19, 2007, the trial court issued a written order granting defendants'

motions for summary judgment and to strike portions of plaintiffs' motion for summary judgment,

and denying plaintiffs' motion for summary judgment. Before issuing the written order, the trial

court heard argument from counsel and stated the reasons for its ruling in open court.

First, the trial court ruled on defendant's motion to strike, stating its reasons as follows:

> "At the outset, I'm going to tell you, Mr. Heyrman
>
> [plaintiffs' counsel], I'm going to grant the motion to strike.
>
> This is a case, and I have read your complaint carefully, it's
>
> a case challenging particular practices or what you characterize as
>
> rules of the Elgin Mental Health Center. And the fact that your
>
> summary judgment goes beyond that and says there are other rules
>
> or aspects of rules pertaining to patients' rights to possess certain
>
> personal property, access to cash in their trust fund accounts is not
>
> appropriate on summary judgment.
>
> If it was, every complaint would be a moving target. And
>
> the fact that you included in your complaint an allegation that these
>
> rules or that the Elgin rules, including the particular rules that your
>
> complaint focused on, violate patients' rights does not entitle the
>
> Plaintiffs to, in summary judgment, expand the scope of their
>
> complaint.

8

It is fundamental that a party cannot move for summary judgment on a claim not stated in the complaint. So this argument is limited to the two policies that you challenged in your complaint."

After striking these claims, the trial court next considered the cross-motions for summary judgment. The trial court explained that since it had struck these claims first, these claims were not part of its summary judgment ruling:

"As I said at the outset, I am not going to consider, as part of this motion, any additional claims that the Plaintiff might wish to assert that were not specifically included in the complaint, because that really isn't the function of a summary judgment proceeding."

The trial court then ruled on the cross-motions for summary judgment, stating:

"As to Count One, I find that the Elgin facility, the Elgin Mental Health Center Facility [,] is not an agency within the meaning of the Administrative Procedure Act, and therefore, it is not required to comply with the APA's provisions regarding publishing its rules and providing for public comment on those rules.

Certainly, the Department is subject to the Administrative Procedure Act and Defendants don't argue otherwise, and the Department has, in fact, published rules directed to the subject

9

matter of this litigation, but I don't agree with Plaintiffs and I accept the analysis in Cannon versus Qui[n]ley [351 Ill. App. 3d 1120, 1130-31 (2004)] notwithstanding the Plaintiff in that case was pro se, that the various facilities that are under the auspices of an agency of the State of Illinois themselves have to comply with the Administrative Procedure Act to implement their own rules.

As to the remaining counts of Plaintiff's complaint, I find that, again, focusing solely on the allegations of the complaint as pled at the time [sic] on the motions for summary judgment were filed, that the remaining claims for declaratory and injunctive relief are moot based on the promulgation by the Department of Section 110.30. I disagree with respect to Count 5, that the provisions of the Mental Health Code quoted requires that the Department allow patients the unlimited ability to have as much cash on their person or in the vicinity of their person as they choose.

I find that the statute is not ambiguous and that it simply provides the patient[s] shall not have access to their funds restricted. The implementation of a cashless system or a debit card system or a requirement that particular purchases require advance approval is not a restriction on access, and the right of access does not translate into the right to have on a patient's person an

10

unlimited amount of cash.

> "And so for these reasons, I'm going to grant Defendants' motion for summary judgment, and deny Plaintiffs' motion for summary judgment."

After the trial court granted the defendants' motions to strike and for summary judgment, the trial court offered plaintiffs the opportunity to amend the complaint. Plaintiffs' counsel declined, stating that he "would rather have a final and appealable order." On October 9, 2007, plaintiffs filed a notice of appeal, appealing the trial court's grant of defendants' motion for summary judgment and the trial court's denial of plaintiffs' motion for summary judgment. The notice of appeal made no reference to the motion to strike. This appeal followed.

ANALYSIS

In plaintiffs' brief to this court, plaintiffs claim: (1) that the trial court erred in granting the defendants' motion to strike portions of plaintiffs' motion for summary judgment; (2) that the trial court erred in holding that Elgin is not an agency for the purposes of the Illinois Administrative Procedure Act (5 ILCS 100/1-1 et seq. (West 2006) (IAPA), and thus the trial court erred in granting defendants' motion for summary judgment on count I; and (3) the trial court erred in granting defendants' motion for summary judgment on counts II, IV and V because there were issues of material fact. As previously noted, plaintiffs conceded count III in their brief to this court.

No. 1-07-2787

Defendants' Motion to Strike

Before we can consider plaintiffs' claims concerning defendant's motion to strike, we must first decide whether we have jurisdiction to hear these claims. People v. Smith, 228 Ill. 2d 95, 103 (2008). In our review of the record, we found "a potential jurisdictional defect," namely the failure of the notice of appeal to mention the motion to strike. Smith, 228 Ill. 2d at 103.

Earlier this year, our supreme court castigated the appellate court for failing to consider whether a notice of appeal was sufficient to confer jurisdiction on the appellate court. Smith, 228 Ill. 2d at 106. Our supreme court reminded the appellate court that we have an independent duty to consider whether we have jurisdiction, even if the issue has not been raised by any of the parties. Smith, 228 Ill. 2d at 105-06. The supreme court emphasized that consideration of our own jurisdiction is one of the "most important tasks of an appellate court panel when beginning the review of a case." Smith, 228 Ill. 2d at 106. "By giving careful attention to *** [this] task[], a court can avoid the possibly unnecessary expenditure of judicial resources." Smith, 228 Ill. 2d at 106. Thus it is irrelevant that the parties in the case before us have not raised this issue.

As an appellate court, we have jurisdiction to review a case, only if the appellant has filed a proper notice of appeal. Smith, 228 Ill. 2d at 104. Supreme Court Rule 303(b)(2) states unequivocally that a proper notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." (Emphasis added.) 210 Ill. 2d R.303(b)(2). The rule gives the appellant the option of naming either the entire judgment or only a part of the judgment, as the subject of his or her appeal. 210 Ill. 2d R.303(b)(2); In re Estate of Hoellen, 367 Ill. App. 3d 240, 244 (2006) (notice was sufficient when it named the

12

entire "11- page judgment 'Order' "). However, once the judgment or part is named, the "notice of appeal confers jurisdiction on a court of review to consider only the judgements or parts thereof specified in the notice." Smith, 228 Ill. 2d at 104.

Although a notice is jurisdictional, our supreme court has held that we must construe a notice liberally. Smith, 228 Ill. 2d at 104. Our supreme court has held that a reviewing court should find that a defect is not fatal to the appeal, if: (1) a notice's defect is a defect in form rather than in substance; and (2) the defect has not prejudiced the opposing party. Smith, 228 Ill. 2d at 105. In Smith, our supreme court found that the defect before it was not one of form, and thus did not consider the prejudice prong. Smith, 228 Ill. 2d at 105.

In Smith, our supreme court found that the defect was one of substance and thus fatal, because the notice failed to "fairly and adequately set out the judgment complained of." Smith, 228 Ill. 2d at 105. "The notice not only failed to mention the February 21, 2006 order; it specifically mentioned a different judgment, and only that judgment." Smith, 228 Ill. 2d at 105.

Similarly, in the case at bar, the notice of appeal failed to mention the motion to strike. It also contained no reference to the written order, dated September 19, 2007, in which the trial court ruled on both the motion to strike and the summary judgment motions. Not only did the notice fail to mention either the entire order or the relevant part, the notice specified an entirely different part of the order as the subject of the appeal: the summary judgment ruling. Since the notice, like the notice in Smith, specified a "different" ruling, the defect was one of substance. Smith, 228 Ill. 2d at 105.

However, almost 30 years before Smith, our supreme court recognized another exception

13

to Supreme Court Rule 303(b)(2)'s requirement to name the "judgment or part." 210 Ill. 2d R. 303(b)(2). In addition to the exception for form defects, there is also an exception for rulings that were necessary steps to the judgment named in the notice. Burtell v. First Charter Service Corp., 76 Ill. 2d 427, 436 (1979). In Burtell, our supreme court held that an unspecified judgment was reviewable if the specified judgment "directly relates back to [it]." Burtell, 76 Ill. 2d at 434. Applying this reasoning to the facts of the case before it, our supreme court held that the unspecified "decree finding the existence of a joint venture was but a preliminary determination necessary" to the judgment named in the notice, which was "a money judgment based on an accounting." Burtell, 76 Ill. 2d at 436. People v. Jones, 207 Ill. 2d 122, 138 (2003) (where a second trial court found that the first trial court was wrong, the first erroneous order led to the second correct one) .

There is some doubt whether the necessary step exception survived Smith. While our supreme court in Smith cited Burtell for the proposition that notices should be liberally construed, the Smith court did not analyze the notice under the necessary step exception and made no mention of the exception at all. Smith, 228 Ill. 2d at 105. However, we find that the exception still stands, because if our supreme court intended to overturn an exception of such long standing, we assume that it would have done so explicitly. Barry v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago, 357 Ill. App. 3d 749, 763 (2005) (assumed that supreme court did not overrule where not explicitly stated).

The exception applies to this case. In its summary judgment ruling, the trial court held that there was no issue of material fact for trial. Striking some of the issues raised in plaintiffs'

motion for summary judgment was a necessary step to finding that there was no issue of material fact. Rinchich v. Village of Bridgeview, 235 Ill. App. 3d 614, 621 (1992) (unspecified order striking certain affidavits submitted by plaintiff in response to defendants' motion for summary judgment was a necessary step to specified order granting defendants' motion for summary judgment); but see Dalen v. Ozite Corp., 230 Ill. App. 3d 18, 24 (1992) (trial court's orders denying defendant's motions to dismiss the complaint were not a necessary step to trial court's order granting plaintiff's motion for summary judgment).

Having determined that we have jurisdiction, we now turn to the appropriate standard of review. In In re Estate of Hoover, 155 Ill. 2d 402, 420 (1993), our supreme court applied an abuse of discretion standard, to the question of whether a trial court properly granted a motion to strike an affidavit submitted in support of a summary judgment motion.

However, eight years later, in Jackson v. Graham, 323 Ill. App. 3d 766, 773-74 (2001), the appellate court held that de novo was the appropriate standard of review for the same issue. The Jackson court distinguished Hoover by noting that Hoover did not offer a discussion of the issue, and Hoover was decided before Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127 (1999). Jackson, 323 Ill. App. 3d at 774. Employers Insurance concerned an attorney fees petition, not a motion to strike. Employers Insurance, 186 Ill. 2d at 160. In Employers Insurance, our supreme court held that, although abuse of discretion is generally the proper standard of review for an attorney fees petition, de novo was appropriate in that case, because the fees petition was granted in connection with a motion for judgment on the pleadings, which required de novo review. Employers Insurance, 186 Ill. 2d at 160.

Citing Jackson, this court has consistently held that the appropriate standard of review is de novo, for reviewing a motion to strike portions of a summary judgment motion. E.g., Collins v. St. Paul Mercury Insurance Co., 381 Ill. App. 3d 41, 46 (2008); Camco, Inc. v. Lowery, 362 Ill. App. 3d 421, 428 (2005). "We may not depart from stare decisis without special justification. [Citation]. Where the rule of law has been settled and does not contravene any statute or constitutional principle, it may be disregarded only for 'good cause' or 'compelling reasons.' " Iseberg v. Gross, 227 Ill. 2d 78, 101 (2007). Following the precedent of this court and the principle of stare decisis, we will apply a de novo standard of review.

In the case before us, the trial court struck portions of plaintiffs' summary judgment motion because it found that these portions concerned issues not alleged in the complaint.

The purpose of a complaint is to crystallize the issues in controversy, so that a defendant will know what claims it has to meet. Gold Realty Group Corp. v. Kismet Café, Inc., 358 Ill. App. 3d 675, 679 (2005), quoting Pagano v. Occidental Chemical Corp., 257 Ill. App. 3d 905, 911 (1994). When ruling on a motion for summary judgment, the trial court looks to the pleadings to determine the issues in controversy. Gold Realty, 358 Ill. App. at 679 , quoting Pagano, 257 Ill. App. 3d at 911. If a plaintiff desires to place issues in controversy that were not named in the complaint, the proper course of action is to move to amend the complaint. Gold Realty, 358 Ill. App. at 679, quoting Pagano, 257 Ill. App. 3d at 911. If the plaintiff does not seek to amend, then it cannot move for summary judgment on those issues. Gold Realty, 358 Ill. App. at 680, quoting Pagano, 257 Ill. App. 3d at 911; Steadfast Insurance Co. v. Caremark Rx, Inc., 373 Ill. App. 3d 895, 900 (2007) ("A party cannot seek summary judgment on a theory that

was never pled in the complaint.").

In their appellate brief to this court, plaintiffs admit that they did not name in the complaint all the "restrictive practices and procedures at Elgin" that they now wish to challenge. First, they admit that they were not aware of all the practices that existed at the time the complaint was filed; and second they assert that they want to challenge new practices that arose since the filing of the complaint.

As we stated in a prior case regarding the exact same issue, "we are puzzled" by plaintiffs' failure to amend their complaint to include the issues, discovered since the filing of their complaint and asserted in their summary judgment motion. Gold Realty, 358 Ill. App. 3d at 680. Amending plaintiffs' complaint to conform to their summary judgment theory "would have taken a fraction of the time spent litigating the issue we decide today." Gold Realty, 358 Ill. App. 3d at 680.

Plaintiffs seem to be laboring under the misapprehension that they did not need to amend their complaint, because they believe that their complaint was simply about all restrictive practices and procedures at Elgin, whether identified in the complaint or not. In their appellate brief, plaintiffs kept referring to the unpled practices and procedures as additional "evidence," thus confusing fact and evidence.

The existence or nonexistence of a practice is a fact. Roth v. Illinois Insurance Guaranty Fund, 366 Ill. App. 3d 787, 797 (2006) (whether or not something actually exists is a fact); Chandler v. Illinois Central R.R. Co., 207 Ill. 2d 331, 348-350 (2003) (whether or not a railroad engaged in the practice of adequately maintaining its warning signals at a crossing was a fact,

properly alleged in the complaint). By contrast, a patient's affidavit detailing how Elgin applied the practice to him is evidence, on a summary judgment motion. 735 ILCS 5/2-1005(c) (West 2006) (evidence on a summary judgment motion includes depositions, admissions on file, and "affidavits, if any"); People v. Beaman, 229 Ill. 2d 56, 75-76 (2008) (relevant evidence tends to make the existence of a material fact more or less probable). Thus, for example, when plaintiffs alleged in their summary judgment motion that Elgin adopted new practices that prevented plaintiff Filliung from giving items to his family or from using a bag, these were facts that belonged in the complaint. Filliung's affidavit describing how he was prevented from giving items to his family or reprimanded for using a bag was evidence.

While plaintiffs did not have to list their evidence in their complaint, they had to list the ultimate facts that they intended to prove. Iseberg, 227 Ill. 2d at 86. Plaintiffs argue that since their complaint named "specific pieces of law," their suit included any practice that violated such laws However, Illinois is a fact-pleading jurisdiction, requiring a complaint with facts, not mere legal conclusions. Iseberg, 227 Ill. 2d at 86.

The weakness of plaintiffs' argument becomes apparent when one thinks about the statute of limitations. Count I alleges that the challenged rules were improperly promulgated under the Illinois Administrative Procedure Act. 5 ILCS 100/1-1 et seq. (West 2006). The IAPA provides for a two-year statute of limitations for any "proceeding to contest any rule on the ground of non-compliance with the procedural requirements" of the IAPA. 5 ILCS 100/5-35(b) (West 2006). The limitations period is measured from "the effective date of the rule." 5 ILCS 100/5-35(b) (West 2006). If a plaintiff could challenge any rule, whether or not named in the complaint, then a

defendant and the court would have no clue how to measure the appropriate period of limitations.

Thus we find that the trial court was correct in striking the portions of plaintiffs' summary judgment motion that alleged new ultimate facts, not found in their complaint or amended to be there.

### Elgin is Not an Agency

Second, plaintiffs contend on appeal that the trial court erred by granting summary judgment in favor of defendants on count I of the complaint. In count I, plaintiffs alleged that certain policies at Elgin were invalid, because they were not promulgated according to the Illinois Administrative Procedure Act (5 ILCS 100/1-1 et seq. (West 2006)). The trial court granted summary judgment, because it found that Elgin was not an "agency" for purposes of the IAPA and thus Elgin was not subject to the IAPA's provisions for promulgating rules. 5 ILCS 100/1-20 (West 2006) (agency defined); 5 ILCS 100/5-10 (West 2006) (provisions for promulgating rules). Plaintiffs argue that the trial court was in error when it found that Elgin was not an "agency." 5 ILCS 100/1-20 (West 2006).

A trial court must grant a motion for summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006). These documents and exhibits are viewed in the light most favorable to the nonmoving party. Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 315 (2004). On appeal, our standard of review is de novo. Home Insurance, 213 Ill. 2d at 315. We may affirm the trial court's grant of summary judgment on any ground apparent from

the record. <u>Home Insurance</u>, 213 Ill. 2d at 315.

Although the parties did not discuss the issue on appeal, it appears that count I is barred by the applicable statute of limitations. In count I, plaintiffs argued that Elgin's policies were subject to the IAPA. If plaintiffs were correct, then the policies were subject to the IAPA's statute of limitations and count I was time barred. As noted above, the IAPA provides that "[a] proceeding to contest any rule on the ground of non-compliance with the procedural requirements of this Section must be commenced within 2 years from the effective date of the rule." 5 ILCS 100/5-35(b) (West 2006). In the case at bar, copies of both policies were attached as exhibits to the complaint. At the top of each policy is the date of issuance. Both were issued on November 5, 1998. Policy 5125 was also revised on May 1, 2000. Plaintiffs' complaint was filed on September 8, 2005, long after the two-year limitations period had expired, even if we measure the period from the date of the revision. However, the statute of limitations is an affirmative defense that is waived if not asserted, which defendants failed to do. <u>City of Naperville v. Mann</u>, 378 Ill. App. 3d 657, 660 (2008). So we must proceed to analyze the substance of the claim.

There is no dispute that the Department is an agency for purposes of the IAPA. The question before us is whether a facility, supervised by the Department, is also an agency for purposes of the IAPA. Plaintiffs argue that it is, because the IAPA defines an agency to include an "administrative unit" (5 ILCS 100/1-20 (West 2006)); and plaintiffs argue that Elgin is an "administrative unit" of the Department.

An administrative unit qualifies as an agency only if it was "created by or pursuant to statute" or "created by executive order." 5 ILCS 100/1-20 (West 2006). Neither party has

briefed the issue of whether Elgin was created by or pursuant to statute or executive order. Since we find that Elgin is not an administrative unit, we do not need to reach this issue.

There is no dispute that the Department is an agency because a statute expressly states that it is. The Mental Health and Developmental Disabilities Act (the Disabilities Act) sets out "powers and duties of the Department of Human Services relating to mental health." 20 ILCS 1705/1 (West 2006). The Disabilities Act states that the IAPA is "expressly adopted," but only for "administrative rules and procedures of the Department." 20 ILCS 1705/5 (West 2006). If the IAPA conflicts with the Disabilities Act, then the Disabilities Act prevails. 20 ILCS 1705/5 (West 2006). The Disabilities Act gives the Department supervisory authority over "all facilities," specifically naming "[t]he Elgin Mental Health Center, at Elgin." 20 ILCS 1705/4(a) (West 2006).

Both statute and precedent support the finding that the IAPA does not apply to Elgin. When looking to statutory law, we look first to the Disabilities Act, because the Disabilities Act trumps the IAPA if there is a conflict between the two laws. 20 ILCS 1705/5 (West 2006). Thus, even if Elgin technically fell into the IAPA's definition of an agency (5 ILCS 100/1-20 (West 2006)), that is irrelevant if the Disabilities Act excludes Elgin from the IAPA's reach.

The Disabilities Act is clear. It adopts the IAPA only for the rules and procedures "of the Department." 20 ILCS 1705/5 (West 2006). The Disabilities Act specifically talks about facilities like Elgin, but says nothing about applying the IAPA to the rules of an individual facility. 20 ILCS 1705/4, 4.1, 4.2, 4.3 (West 2006). Instead, the Disabilities Act gives the Department supervisory authority over its facilities (20 ILCS 1705/4 (West 2006)), to ensure that the

facilities' rules comply with the Department's promulgated rules. The Disabilities Act requires the Department to make regular on-site visits to "[d]etermine facility compliance with Department policies and procedures," and to "follow-up on complaints" made by mental health "advocates" and others. 20 ILCS 1705/4.3(a) (1), (4) (West 2006). See also People v. Carpenter, 228 Ill. 2d 250, 274-75 (2008) (discussing the difference between a rule subject to Act requirements and a policy that implements an existing rule).

In addition, the Disabilities Act does require each facility to publish certain of its policies (20 ILCS 1705/4.1 (West 2006)), as the IAPA requires of promulgated rules. 5 ILCS 100/5-65(b) (requiring publication of new rules in the Illinois Register) (West 2006). If the IAPA already required publication of an individual facility's policies, then the Disabilities Act's separate publishing requirement would be redundant and unnecessary. Thus, the relevant statute supports the finding that the IAPA does not apply to Elgin.

Second, case law also compels the same finding. The appellate court has already ruled that a facility's rules are not subject to the IAPA. Cannon v. Quinley, 351 Ill. App. 3d 1120, 1130-31 (2004). In Cannon, the appellate court held that while the rules of the Illinois Department of Corrections (DOC) had to be promulgated according to the IAPA, the IAPA did not apply to the rules of an individual correctional facility. Cannon, 351 Ill. App. 3d at 1131. Romero v. O'Sullivan, 302 Ill. App. 3d 1031, 1034-35 (1999) (contrasting the rules of the DOC that must be published in the administrative code, with the institutional policies of each correctional facility).

The analogy between Cannon and the case at bar is too close to ignore. Both cases

22

involved a facility to which a defendant could be committed; and both cases involved policies only in effect at a particular facility. Cannon, 351 Ill. App. 3d at 1130-31. Even though Cannon was the sole case on which the trial court relied, plaintiffs' appellate brief does not even try to distinguish it. Like plaintiffs, we cannot find a distinction either.

Based on both statute and precedent, we agree with the trial court's finding that Elgin was not an "agency" for purposes of the IAPA. 5 ILCS 100/1-20 (West 2006). We therefore affirm the trial court's grant of summary judgment in favor of defendants on count I of the complaint.

New Regulation Moots Remaining Claims

While count I challenged the procedure by which rules at Elgin were made, the remaining counts challenged the substance of those rules. However, the substance of the two challenged Elgin policies has been made moot, by the Department's subsequent adoption of a Department-wide, IAPA-promulgated regulation. The irony is that by getting what they asked for in count I – namely, an IAPA-promulgated rule – it mooted the rest of their claims.

Count I is not moot, for two reasons. First, the process which plaintiffs challenged , namely the implementation by facilities of rules not promulgated according to the IAPA, still continues, and thus still affects plaintiffs' rights and defendants' duties. Mohanty v. St. John Heart Clinic, S.C., 225 Ill. 2d 52, 63 (2006) (a case is not moot if a decision could have a direct impact on the rights and duties of the parties). Second, count I falls firmly into the public interest exception to the mootness doctrine. Brown v. Duncan, 361 Ill. App. 3d 125, 134 (2005). "In order to fall into the public interest exception (1) the question must be of a public nature; (2) an authoritative determination of the question must be desirable for the purpose of guiding public

23

officers; and (3) the question must be likely to recur." Brown, 361 Ill. App. 3d at 134. First, the question is of a public nature, since it concerns whether the rules of a state-run facility must be published to the public. Second, an authoritative determination is desirable for the purpose of guiding the public officers who run these facilities. Third, the question may very well be brought again in another complaint, that simply names a different pair of inmates and a different pair of policies. Thus, the mootness doctrine did not bar our consideration of count I.

The remaining counts (counts II, IV and V) are moot because they concern the substance of polices that have been superceded by the passage of a new regulation. Our supreme court has held that " 'where a challenged statute is amended while the cause is pending, the question of the statute's validity becomes moot, thus rendering unnecessary its review by the court.' " People v. Johnson, 225 Ill. 2d 573, 580 (2007), quoting People v. B.D.A., 102 Ill. 2d 229, 233 (1984).

In addition, plaintiffs have admitted that Policy 2105 and Policy 5125, the two policies named in their complaint, were rendered moot by the passage of the new regulation. Defendants amended their answer to add an affirmative defense of mootness. "If new matter by way of defense is pleaded in the answer, a reply shall by filed by the plaintiff ***." 735 ILCS 5/2-602 (West 2006). In addition, "[e]very allegation [in a pleading], except allegations of damages, not explicitly denied is admitted ***." 735 ILCS 5/2-610 (b) (West 2006). Thus, "failure to reply to an affirmative defense constitutes an admission of the allegations contained therein." State Farm Mutual Automobile Insurance Co. v. Haskins, 215 Ill. App. 3d 242, 246 (1991), citing Lundberg v. Gage, 22 Ill. 2d 249, 251 (1961) ("No reply was made to the allegations setting up the affirmative defense and they are therefore admitted."). Plaintiffs chose not to file a reply, and

thereby admitted the defense.

Supreme Court Rule 136 provides an exception to the denial rule, but this exception does not help plaintiffs. 134 Ill. 2d R. 136. Supreme Court Rule 136(b) is entitled "Pleadings After Reply," and it states that "no response to a reply or subsequent pleading is required." 134 Ill. 2d R. 136. Thus, the explicit and unambiguous language of Supreme Court Rule 136 provides that no denial is necessary either: (1) to a reply; or (2) to any pleading subsequent to a reply. 134 Ill. 2d R. 136. Defendants' amended answer does not fall into either category, so this exception is of no help to plaintiffs.

Another exception to the denial rule is that if the added allegations are not new and the existing complaint already negates them, then a reply is not necessary. Central Illinois Public Service Co. v. Molinarolo, 223 Ill. App. 3d 471, 473 (1992); State Farm, 215 Ill. App. 3d at 246; Adams v. Zayre Corp., 148 Ill. App. 3d 704, 711 (1986); Shive v. Shive, 57 Ill. App. 3d 754, 759 (1978). This exception does not help plaintiffs either, because defendants' affirmative defense was new and the complaint could not be construed to already deny it. For these reasons, plaintiffs have admitted the mootness of the two policies named in their complaint.

In their appellate brief, plaintiffs argue that the remaining counts are not moot because "restrictive policies and rules are still in place" at Elgin, despite the new regulation. Plaintiffs' brief does not identify the restrictive policies and rules still in place, so this court is left to guess which ones plaintiffs had in mind. If plaintiffs wanted to argue either that the new regulation did not comply with the statutes cited in their complaint or that certain named and continuing practices at Elgin did not comply with the new regulation, then the solution was to amend the

complaint to incorporate the new regulation.  However, after the trial court held that the new regulation mooted their claims, the trial court offered plaintiffs the opportunity to amend their complaint, and plaintiffs refused.

Plaintiffs also argue that their claims are not moot, due to the additional policies and practices cited in their motion for summary judgment.  But, as discussed above, that material was properly struck by the trial court and thus is of no avail to plaintiffs.  Again, plaintiffs were offered the opportunity to amend their complaint to include this additional material, and they declined.

For the foregoing reasons, we affirm the trial court's finding that counts II, IV and V are moot.

CONCLUSION

For the foregoing reasons, this court affirms the order of the trial court.  First, we find that the trial court properly struck,  from plaintiffs' summary judgment motion, the issues that were not alleged in plaintiffs' complaint.  Second, we affirm the trial court's finding that Elgin is not an agency for purposes of the IAPA, and thus affirm the trial court's grant of summary judgement on count I in favor of defendants.  Third, we affirm the trial court's grant of summary judgment on the remaining counts (counts II, IV and V), because the two challenged policies were rendered moot by the subsequent enactment of superceding regulation.   As previously noted, plaintiffs conceded count III on appeal.

Affirmed.

HALL and GARCIA, JJ., concur.