2024 IL App (1st) 232373-U

FIRST DISTRICT,
SIXTH DIVISION
November 1, 2024

No. 1-23-2373

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ROSEANNA BASIL, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 22 L 002203 |
| DANIEL S. JOHNSON and VILLAGE OF ELK GROVE VILLAGE, an Illinois Municipal Corporation, | ) ) ) ) ) | Honorable Anthony C. Swanagan, Judge Presiding. |
| Defendants-Appellees. | ) ) | |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We reverse summary judgment in favor of defendants and remand for further proceedings where there are genuine issues of material fact as to whether defendants are immune from liability under sections 2-202 and 2-109 of the Tort Immunity Act.

¶ 2     Plaintiff Roseanna Basil filed a complaint against Village of Elk Grove police officer Daniel S. Johnson and the Village of Elk Grove (Village) (collectively, defendants), to recover for injuries sustained from an automobile collision with Johnson. Johnson and the Village moved for summary judgment based on sections 2-202 and 2-109 of the Local Government and

Government Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-202; 745 ILCS 10/2-109 (West 2022)). The trial court granted summary judgment in favor of defendants. On appeal, Basil argues that there are genuine disputes of material fact concerning whether Johnson was executing or enforcing the law at the time of the accident and whether his conduct was willful and wanton. Basil also argues that the Village judicially admitted liability, which waives the assertion of immunity. For the following reasons, we reverse and remand for further proceedings.

¶ 3                                            I. BACKGROUND

¶ 4        On May 28, 2021, Johnson was on patrol in a marked squad car when he was involved in an automobile accident with Basil. On March 8, 2022, Basil filed a two-count complaint against defendants, alleging willful and wanton conduct or reckless disregard based on Johnson's failure to keep a proper and sufficient lookout, failure to activate his emergency lights and sirens while driving at a "high rate of speed," failure to apply his brakes to avoid the collision, and driving "too fast for conditions in responding to a non-emergency situation."

¶ 5        Defendants moved for summary judgment, asserting they are immune from liability under sections 2-202 and 2-109 of the Tort Immunity Act because Johnson was executing or enforcing the law at the time of the collision and there is no evidence that his conduct was willful and wanton. Defendants' motion was supported by Johnson's and Basil's depositions and Johnson's dashboard camera (dash cam) footage.

Johnson testified in his deposition that on May 28, 2021, he was on duty as a patrol officer in a McDonald's parking lot. Around 8:09 a.m., he observed two individuals exit the McDonald's and approach a white box truck. Their "jovial" and "happy" demeanor changed when they noticed Johnson. A third individual, who was inside of the truck, was acting "nervous

and anxious and looking down at his cell phone." Johnson observed that the truck lacked a visible safety inspection sticker, which all commercial trucks are required to display. Upon checking the vehicle's registration, he discovered it was expired. Johnson believed he had "reasonable suspicion and probable cause" to pull the truck over based on these violations. He also wanted to "investigate further" due to the suspicious nature of the occupants, since he had previously "uncovered guns, drugs, things of that event" under similar circumstances.

¶ 6    Johnson testified he followed the white truck out of the parking lot and proceeded westbound on Greenleaf Avenue. The dash cam footage shows Johnson drove west in the oncoming eastbound lane of Greenleaf Avenue to pursue the truck, which was travelling west in the westbound lane.  Basil's vehicle was also travelling west in the westbound lane, a fair distance behind a white truck. Johnson saw Basil's vehicle slowdown as she began to turn left into a parking lot. Johnson "believed ** plaintiff had seen [him] and was slowing down in her lane as [he] was passing." As she turned, Johnson veered left onto the sidewalk to try to avoid the collision, but Basil's front driver's side struck the front passenger side of Johnson's squad car.

¶ 7    The speed limit on Greenleaf Avenue was 30 miles per hour. Johnson did not know how fast he was traveling, but it "wasn't what [he] would deem excessive." Johnson testified he activated his emergency lights "not long" before the collision. He did not activate his siren.

¶ 8    After the collision, Johnson did not "radio in" for another officer to pursue the truck and he "could not conclude definitively at that time that [the truck] contained any contraband." He explained he would have needed to weigh the truck "as it was on the roadway that day" and put the driver's information on the citation, which he could not do after the fact. When asked if the white box truck can be seen anywhere on the dash cam footage, Johnson explained that the

"moving box truck on westbound Greenleaf" can be seen "directly in front of the vehicle when [he] was in the collision." A review of the dash cam footage supports this testimony.

¶ 9     Basil testified at her deposition that she saw Johnson's vehicle in the McDonald's parking lot, but she did not see it driving behind her or on the side of her. She did not see any emergency lights prior to the collision or hear a siren. Basil did not know how fast Johnson's car was travelling but she said it was fast and her car was "[t]otaled." After the collision she asked Johnson: "Where did you come from *** because you were not around me at all." She also asked him "where he got his license from" and "why [was he] going so fast." Johnson said he was trying to catch up to a truck with an expired registration. Johnson did not mention his suspicions of contraband. He just said it was for registration.

¶ 10     Basil testified she did not see Johnson turn on his lights until after the collision. She also testified that a co-worker Maria, who came out running when she heard the crash, told her she saw Johnson put on his lights after the crash. Johnson's dash cam footage shows Johnson's lights were on immediately after the crash. This is evident from the reflection of a car mirror. However, the dash cam does not show if the lights were on before impact, like Johnson said.

¶ 11     A review of the dash cam shows Johnson turning right onto Greenleaf Avenue after exiting the McDonald's parking lot. He immediately moves into the oncoming eastbound lane while traveling west, passes one car on his right, and remains driving in the wrong lane as he approaches Basil. Basil's vehicle is braking in the westbound lane with the left turn signal on. As Johnson approaches Basil's vehicle, a white box truck can be seen further down the road, traveling west on Greenleaf. Basil begins to turn left with her turn signal on as Johnson is passing her in the eastbound lane. Johnson admitted he saw her slow down and recognized she was turning as he attempted to pass her. Johnson then veered onto the sidewalk to avoid the

collision, but Basil's vehicle collides with the squad car anyway. Approximately 33 seconds elapsed from the time Johnson started following the truck until the collision.

¶ 12     Basil opposed defendants' motion for summary judgment, arguing there were genuine issues of material fact pertaining to whether Johnson was executing or enforcing the law and whether his conduct was willful and wanton. Basil also argued defendants judicially admitted liability and, thus, could not assert immunity.

¶ 13     On December 13, 2023, the trial court granted defendants' motion for summary judgment, finding Basil "ha[d] not presented evidence sufficient to create a genuine issue of material fact as to the defendants' immunity protections." Basil appeals.

¶ 14                              II. ANALYSIS

¶ 15     Basil argues that the trial court erred in granting summary judgment in favor of defendants where there were genuine issues of material fact concerning whether Johnson was executing or enforcing the law and whether his conduct was willful and wanton. Basil also argues defendants admitted liability and, thus, are not entitled to immunity.

¶ 16     Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits, viewed in the light most favorable to the nonmoving party, establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 245 (2007); see 735 ILCS 5/2-1005(c) (West 2022). While summary judgment can aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Thus, it "should be allowed only where the right of the moving party is clear and free from doubt." *Id.* Where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be

denied and the issue decided by the trier of fact. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.,* 165 Ill. 2d 107, 114 (1995). When responding to a motion for summary judgment, a plaintiff need only present evidence sufficient to show a genuine dispute about a factual issue; it is not required to prove its case at the summary judgment stage. *Thompson v. Gordon,* 241 Ill. 2d 428, 438 (2011). We review the trial court's grant of summary judgment *de novo*. *Filliung v. Adams*, 387 Ill. App. 3d 40, 53 (2008).

¶ 17                                                    A. Judicial Admission

¶ 18          Basil states that on June 14, 2021, prelitigation, Jennifer Anaya, a multi-line claims consultant and adjuster for Cannon Cochran Management Services, Inc. (CCMSI), acknowledged in an email that the Village "accepts liability for this loss." Basil argues defendants judicially admitted Anaya's statement in their response to Rule 216 requests to admit and, therefore, waived the immunity defense. Not so.

¶ 19          "A judicial admission is a statement made during a judicial proceeding or contained in a document filed with the court" that is binding on the party that made it. *Williams Nationalease, Ltd. v. Motter*, 271 Ill. App. 3d 594, 616 (1995). It must be a "deliberate, clear, unequivocal statement[ ] by a party about a concrete fact within that party's knowledge." *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). "Judicial admissions include admissions made in pleadings, testimony in open court, stipulations, and in response to requests to admit." *In re Estate of Ivy*, 2019 IL App (1st)181691, ¶ 64. Where a judicial admission is made, it cannot be contradicted in a motion for summary judgment or at trial. *Id.*

¶ 20          First, Anaya is a claims adjuster and agent for CCMSI. She is not a party to the litigation or defendants' officer, attorney, or agent. Second, Anaya's email is not a judicial admission, as it was made prelitigation, not "during a judicial proceeding or contained in a document filed with

the court." See *Williams Nationalease, Ltd.*, 271 Ill. App. 3d at 616. Third, defendants did not admit liability in their response to Basil's Rule 216 requests to admit. Rather, defendants only admitted that a claims adjuster sent an email purporting to accept liability on the Village's behalf. They explicitly denied in their response that the Village accepted liability. Accordingly, we reject Basil's argument that defendants judicially admitted liability and are barred from raising the Tort Immunity Act.

¶ 21                                    B. Tort Immunity Act

¶ 22        Section 2-202 of the Tort Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2022). "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2022). Because we find there are genuine issues of material fact as to whether defendants are immune from liability under sections 2-202 and 2-109 of the Tort Immunity Act, we reverse summary judgment and remand for further proceedings.

¶ 23                               1. *Executing or Enforcing the Law*

¶ 24        The dimensions of section 2-202 immunity are "narrower than the scope of a police officer's employment or the performance of his official duties and functions." *Carter v. Du Page County Sheriff*, 304 Ill. App 3d. 443, 452 (1999). A police officer is not engaged in the execution or enforcement of a law merely because he is on duty. *Fitzpatrick v. City of Chicago*, 112 Ill. 2d 211, 220 (1986). Accordingly, immunity does not attach "where an officer is engaged in routine elements of his official duties, such as transporting a prisoner [citation], engaging in routine patrol [citation], or investigating a missing person report [citation] ***." *Bruecks v. County of Lake*, 276 Ill. App. 3d 567, 568 (1995). Whether an officer is executing or enforcing a law is

typically a question of fact, but it may be determined as a matter of law "where the evidence is undisputed or *** susceptible to only one possible interpretation." *Carter*, 304 Ill. App 3d. at 452.

¶ 25     The parties dispute whether Johnson was executing or enforcing a law at the time of the collision. The limited amount of evidence in the summary judgment record seems to suggest he was, but it is not so clear cut as to find no triable issue of fact. In reviewing the grant of summary judgment, we must view the evidence in the light most favorable to Basil and strictly against defendants. Applied here, this means the lack of corroboration of Johnson's testimony, coupled with Basil's plausible alternate theory, precludes summary judgment.

¶ 26     Johnson testified he had "reasonable suspicion and probable cause" to pull the white truck over based on its expired registration, and he was following the truck on Greenleaf Avenue to "investigate further." The dash cam shows a white box truck travelling westbound on Greenleaf Avenue, consistent with Johnson's testimony, but this is all we have. There is no evidence corroborating Johnson's statement that he checked the vehicle's registration. Surely, if Johnson checked the system, there would be some record of it. There would at least be a notation of the license plate, expired registration number, or owner of the white box truck, which could have been presented at summary judgment.

¶ 27     Additionally, the parties dispute whether Johnson activated his emergency lights prior to the collision. If Johnson was pursuing the truck for a traffic violation as he claims, it seems he would have activated his lights, particularly while driving the wrong way in the eastbound lane and passing vehicles travelling west in the westbound lane. The fact Johnson did not "radio in" for another officer to pursue the truck, which he thought might have contraband, also supports

Basil's theory that Johnson was not executing or enforcing a law at the time of the collision. It is at least enough to raise a triable issue and preclude summary judgment.

¶ 28    Viewing the record in the light most favorable to Basil, a factfinder could choose to discredit Johnson's explanation and find he was not executing or enforcing a law at the time of the collision. If he was not, and if he was simply engaged in routine elements of his official duties, immunity does not attach. See *Sanders v. City of Chicago*, 306 Ill. App. 3d 356, 362 (1999) (finding that immunity did not apply where "the trier of fact could find that [the officer] was engaged in routine patrol at the time of the accident").

¶ 29                        2. *Willful and Wanton Conduct*

¶ 30    In addition, we find there are genuine issues of material fact as to whether Johnson's conduct was willful and wanton. As noted, section 2-202 of the Tort Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2022). "Willful and wanton conduct" is defined as "a course of conduct which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2022).

¶ 31    Whether a police officer's actions amount to willful and wanton conduct is typically a question reserved for the trier of fact. *Shuttlesworth v. City of Chicago*, 377 Ill. App. 3d 360, 366 (2007). However, it may be resolved on a motion for summary judgment "when all the evidence viewed in the light most favorable to the nonmovant so overwhelmingly favors the movant that no contrary determination based on that evidence could ever stand." *Id.* Based on the record, we cannot say the evidence so overwhelmingly favors defendants that no contrary determination

could ever stand. There are factual questions to be resolved by the trier of fact pertaining to whether and when Johnson activated his lights, how fast he was travelling, his failure to activate his siren, why he was driving on the wrong side of the street, and whether he followed any police policy and procedures for pursuit. All of this goes to the question of willful and wanton conduct or conduct showing a reckless disregard for the safety of others.

¶ 32     The trial court likened this case to *Shuttlesworth*, 377 Ill. App. 3d at 368, which held there was no willful and wanton conduct, under the undisputed facts of that case, for the pursuit of a car which fled after being stopped for a non-emergency traffic violation. Here, however, the facts are in dispute and the inferences that may be drawn from them are appropriate for a trier of fact to decide.

¶ 33     Unlike in *Shuttlesworth*, Johnson pursued the white box truck for a traffic violation, but the truck did not flee. The truck likely did not even know it was being followed based on our review of the dash cam. Although Johnson suspected there might be contraband in the truck, there is no evidence to support his theory other than a hunch.

¶ 34     Like other cases that have granted summary judgment, this collision occurred within only 33 seconds of Johnson following the truck. The roads were dry and the sky was clear. Nonetheless, Johnson's pursuit was on a two-lane 30-mile-per-hour street. Johnson was traveling on the wrong side of the street following a truck that was not going the wrong way. Johnson saw Basil slow down, and the dash cam shows she put on her left turn signal before turning. Johnson did not activate his siren to alert Basil that he was approaching her vehicle, and there is a factual dispute as to whether and when he activated his lights. The parties also dispute the rate of speed at which Johnson was travelling. A trier of fact should be allowed to weigh these competing reasonable inferences and decide if Johnson acted willfully and wantonly.

¶ 35                                     III. CONCLUSION

¶ 36        As stated above, summary judgment is a drastic measure and should only be granted

when the movant's (here, defendants') right to judgment is clear and free from doubt. Here, it is

not. Accordingly, we reverse summary judgment for defendants and remand this cause to the

circuit court for further proceedings.

¶ 37        Reversed and remanded.