# Illinois Official Reports

## Appellate Court

---

**JPMorgan Chase Bank, National Ass'n v. Ivanov,**
**2014 IL App (1st) 133553**

---

| | |
|---|---|
| Appellate Court Caption | JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, Plaintiff-Appellee, v. KONSTANTIN IVANOV, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-3553 |
| Filed | September 26, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order confirming the sale of defendant's condominium in mortgage foreclosure proceedings was reversed and service by publication was quashed, since plaintiff bank failed to comply with the statutory prerequisites for service by publication for purposes of obtaining personal jurisdiction over defendant, especially when defendant established that he could have been found and served at his condominium upon due inquiry; furthermore, the trial court erred in disregarding defendant's affidavits with respect to his continued occupancy of the condominium. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-022214; the Hon. David B. Atkins and the Hon. Lisa A. Marino, Judges, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

John D. Galarnyk, Sarah E. Allison, Andrew J. Cunniff, and Kate L. Grahl, all of Galarnyk & Associates, Ltd., of Chicago, for appellant.

Edward J. Lesniak and Susan M. Horner, both of Burke, Warren, MacKay & Serritella, P.C., of Chicago, for appellee.

Panel

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Palmer and Justice Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Konstantin Ivanov appeals the trial court's order confirming the sale of a condominium in a mortgage foreclosure action brought by plaintiff JPMorgan Chase Bank, National Association (the bank). On appeal, defendant claims: (1) that the trial court did not obtain personal jurisdiction over defendant by service by publication because plaintiff failed to meet the requirements of section 2-206(a) of the Illinois Code of Civil Procedure (735 ILCS 5/2-206(a) (West 2010)) and Rule 7.3 of the circuit court of Cook County (Cook Co. Cir. Ct. R. 7.3 (Oct. 1, 1996)) and (2) that the trial court failed to properly consider defendant's affidavits when ruling on his motion to quash service by publication and motion to reconsider. For the following reasons, we reverse.

¶ 2                                  BACKGROUND
¶ 3                          I. Complaint to Foreclose
¶ 4 On June 27, 2007, defendant borrowed $273,000 from the bank, secured by a mortgage on a condominium unit located at 1675 Mill Street Unit No. 202, Des Plaines, Illinois, 60616.

¶ 5 On May 25, 2010, Chase Home Finance, LLC,[1] filed a complaint to foreclose the mortgage against defendant as the mortgagee under section 15-1208 of the Illinois Code of Civil Procedure (735 ILCS 5/15-1208 (West 2010)), alleging that defendant was in default in the amount of $272,802.57 in unpaid principal. Plaintiff also named River Mill Condominium Association and unknown owners and nonrecord claimants as defendants in order to terminate their interest in the mortgaged property.

---

[1] On May 23, 2011, Chase Home Finance filed a motion to substitute JPMorgan Chase Bank, National Association, as plaintiff, stating that "[s]ubsequent to filing the complaint, [Chase Home Finance] merged into JPMorgan Chase Bank, National Association." On June 23, 2011, the trial court entered an order substituting JPMorgan Chase Bank, National Association, as party plaintiff.

## II. Service by Publication

On February 17, 2010, the trial court entered an order appointing the following private detective agencies certified under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 (225 ILCS 447/5-3 *et seq.* (West 2010)) as standing special process servers in cases filed by the bank's attorneys in the mortgage foreclosure section of the chancery division until May 31, 2010: (1) Pro-Vest, Inc., (2) Firefly Legal, Inc., (3) Amicus Professional Legal Services, Inc., and (4) United Processing, Inc. On May 25, 2010, plaintiff filed a motion to appoint Pro-Vest, Inc., Firefly Legal, Inc., and United Processing, Inc., as special process servers pursuant to section 2-202 of the Illinois Code of Civil Procedure (735 ILCS 5/2-202 (West 2010)) in the case at bar.

On June 11, 2010, plaintiff filed two affidavits to allow service by publication, alleging that it had tried three times over Memorial Day weekend to serve defendant without success. The record on appeal does not contain a motion by plaintiff moving the trial court to allow service by publication. However, it contains two affidavits to allow service by publication, both of which were filed by plaintiff on June 11, 2010.

### A. Attorney's First Affidavit

The first affidavit was dated June 10, 2010, and entitled "Affidavit to Allow Service by Publication Pursuant to 735 ILCS 5/2-206."[2] It stated the following:

> "[Bridget O'Neill], the undersigned attorney, on oath states as to Defendants:
>
> Konstantin Ivanov
>
> Unknown Owners and Nonrecord Claimants
>
> 1. Defendants reside or have gone out of this State, or on due inquiry cannot be found, or are concealed within this State, so that process cannot be served upon them.
>
> 2. Diligent inquiry has been made as to the whereabouts of all the aforesaid Defendants.
>
> 3. That upon diligent inquiry, the place of residence of the aforesaid Defendants cannot be ascertained and/or their last known place of residence is:
>
> Konstantin Ivanov, 1675 Mill Street Unit #202 Des Plaines, IL 60016
>
> Unknown Owners and Nonrecord Claimants, 1675 Mill Street Unit #202 Des Plaines, IL 60016[.]"

This affidavit did not specify what "diligent inquiry" had been made.

---

[2]Section 2-206(a) of the Illinois Code of Civil Procedure provides that "plaintiff or his or her attorney shall file *** an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained, the clerk shall cause publication to be made in some newspaper published in the county in which the action is pending. *** The clerk shall also, within 10 days of the first publication of the notice, send a copy thereof by mail, addressed to each defendant whose place of residence is stated in such affidavit." 735 ILCS 5/2-206(a) (West 2010).

The second affidavit was also dated June 10, 2010, and entitled "Affidavit to Allow Service by Publication Pursuant to Local Rule 7.3."[3] It stated the following:

> "[Bridget O'Neill], the undersigned attorney, on oath states as to Konstantin Ivanov:
>
> 1. Konstantin Ivanov resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon them. Service upon Konstantin Ivanov has been attempted by United Processing, Inc., the Court Appointed Special Process Server (see exhibit B).
>
> 2. Diligent inquiry has been made as to the whereabouts of Konstantin Ivanov, (see exhibit A).
>
> 3. That upon diligent inquiry, the place of residence of Konstantin Ivanov cannot be ascertained and/or their last known place of residence is: 1675 Mill Street Unit #202 Des Plaines, IL 60016[.]"

This affidavit also did not specify what "diligent inquiry" had been made but it did attach two supporting affidavits as exhibits A and B.

The first affidavit, or exhibit A, is dated June 4, 2010, and is signed by Corey Fertel, a well-known owner of a process-serving company. Although Fertel signed the affidavit, the affidavit stated that an individual named Matt Cunningham recounted the actions that Fertel took to find defendant. The affidavit stated the following:

> "Before me, the undersigned authority, this day, personally appeared, Matt Cunningham, who upon being first duly sworn, upon his/her oath, deposes and says:
>
> 'A diligent search and inquiry to discover the name and residence of Konstantin Ivanov was performed by the following acts set forth, as particularly as is known to Corey Fertel, below.'
>
> After diligent search and inquiry by affiant, the residence of the subject person is unknown to affiant."

However, Fertel searched only for "*new* addresses or phone numbers" and "*new* results for the named defendant" in whitepages.com, local and federal prisons, "a private database that utilizes thousands of different public records databases and other resources," and the "SS Death Index." (Emphases added.) Fertel also performed the following searches to find "new" results for defendant's name: national phone directory, hunting licenses, "UCC" liens, voter registration, aircraft, boaters, and bankruptcies, among others. The following is a portion of the aforementioned list of inquiries performed by Fertel to locate defendant:

> "The following searches were done for the defendant:
>
> 1. Aircraft–No new results.

---

[3]Rule 7.3 of the circuit court of Cook County states that "[p]ursuant to 735 ILCS 5/2-206(a), due inquiry shall be made to find the defendant(s) prior to service of summons by publication. In mortgage foreclosure cases, all affidavits for service of summons by publication must be accompanied by a sworn affidavit by the individual(s) making such 'due inquiry' setting forth with particularity the action taken to demonstrate an honest and well directed effort to ascertain the whereabouts of the defendant(s) by inquiry as full as circumstances permit prior to placing any service of summons by publication." Cook Co. Cir. Ct. R. 7.3 (Oct. 1, 1996).

2. Bankruptcies–No new results.

3. Judgments–No new results.

4. Liens–No new results.

5. Boaters–No new results.

6. Business Phones–No new results.

7. Concealed Weapons–No new results.

\* \* \*

23. National Security Watch Lists–No new results."

¶ 14 In addition, the affidavit of Mark Wiebe, a court-appointed special process server, is dated June 3, 2010, and attached as exhibit B to the attorney's second affidavit. Mark Wiebe of United Processing, Inc., stated that he had been "unable to effect service of the within Mortgage Foreclosure Summons and Complaint to Foreclose Mortgage on Konstantin Ivanov." The affidavit then provided a table showing that Wiebe visited defendant's property three times: (1) May 27, 2010, at 11:15 a.m.; (2) May 28, 2010, at 8:35 a.m.; and (3) May 30, 2010, at 9:55 a.m.

¶ 15 We take judicial notice of the fact that these visits occurred on a Thursday, a Friday, and a Sunday over the Memorial Day weekend, and that all visits occurred within the same timeframe, namely, between 8:30 a.m. and 11:30 a.m.

¶ 16 On May 27, 2010, Wiebe observed that: "4 story multi unit secured building. Def in bell system ings [*sic*] disconnected phone. Unit appears to be vacant, will return to confirm." On May 28, 2010, he observed that: "[u]nit still appears vacant." On May 30, 2010, he observed that: "[t]his visit confirms to me the unit is vacant." Below the table, the affidavit stated: "Comments/Prev. Attempts: Unit is vacant, phone is disconnected, one neighbor says he heard he went back to his family in Poland. Pics [*sic*] attached." Two photographs were attached: (1) the first showed the interior of the apartment building's lobby through glass doors and (2) the second showed the exterior of the apartment building.

¶ 17 It is unclear from the "disconnected phone" statement in the affidavit whether that means that the intercom was not connected to a landline or that the intercom handset was not working. Also, the "one neighbor" is not identified by name or address. The affidavit does not indicate whether the "neighbor" lived in the same building.

¶ 18                                              III. Default

¶ 19 The bank published a notice of the pending action against defendant in the Chicago Daily Law Bulletin on June 17, 2010, June 24, 2010, and July 1, 2010. Almost a year later, on May 23, 2011, it filed a motion for entry of an order of default and for judgment of foreclosure and sale against defendant for failure to appear and answer. On June 23, 2011, the trial court entered an order of default and judgment for foreclosure and sale against defendant.

¶ 20 On August 18, 2011, a notice of sale was mailed to defendant at 1675 Mill Street Unit No. 202, Des Plaines, Illinois, 60616, informing him that a judgment of foreclosure and sale had been entered against him and that the property would be sold at public auction a month later on September 27, 2011. Defendant's brief on appeal stated that: "This was the first time that [defendant] became aware of the lawsuit."

¶ 21    We note that section 15-1502.5 of the Illinois Code of Civil Procedure (735 ILCS 5/15-1502.5 (West 2010)) requires that the mortgagee send the mortgagor notice of a grace period before filing a foreclosure suit. This notice informs mortgagors that their loan is more than 30 days overdue and they have a 30-day grace period to obtain approved housing counseling. 735 ILCS 5/15-1502.5(c) (West 2010). "Until 30 days after mailing the notice *** no legal action shall be instituted under Part 15 of Article XV of the Code of Civil Procedure." 735 ILCS 5/15-1502.5(d) (West 2010). In the case at bar, the record on appeal contains no information regarding a grace period notice and defendant's brief on appeal stated that he first learned of the foreclosure action when the notice of sale was mailed to him on August 18, 2011.

### IV. Motion to Quash

¶ 23    On October 17, 2011, defendant filed a motion to quash service and to vacate the judgment for foreclosure, claiming that the service made by publication was invalid since defendant resided at the property and was not personally served. In support of his motion, defendant filed two affidavits. The first affidavit, dated October 17, 2011, stated that he had "resided at 1675 Mill Street Unit # 202, Des Plaines, Illinois 60616 *** continuously since [he] purchased the condominium in June 2007. Specifically, [he] resided at the Property at all times, on, before and after May 25, 2010."

¶ 24    Defendant's second affidavit, dated December 5, 2011, stated that the bank could have served him at the property before or after working hours, during the week, and on weekends; plaintiff would have found the property to be occupied if it had looked because the property contained defendant's personal belongings and was his primary place of residence; and plaintiff could have asked defendant's neighbors or the property manager regarding defendant's residence.

¶ 25    On December 15, 2011, the trial court denied defendant's motion to quash in a short written order, which does not indicate the trial court's reasons for denying defendant's motion to quash but does state that the trial court was "fully advised on the premises."

### V. Motion to Reconsider

¶ 27    On January 13, 2012, defendant filed a motion to reconsider, attaching a third affidavit, dated January 13, 2012, stating that defendant has "not attempted to conceal his whereabouts or leave the state to avoid litigation." In response to Wiebe's affidavit, which stated that "one neighbor says he heard [defendant] went back to his family in Poland," defendant's third affidavit stated that he is "Bulgarian, not Polish. [He has] never resided in Poland, nor does any of [his] family reside in Poland." Moreover, the affidavit stated that "at all times on, before, and after May 25, 2010," the property address was listed as defendant's address on his Illinois driver's license, bank accounts, paychecks from his employer, and his active Comcast cable and Internet account. Accordingly, defendant attached copies of his driver's license, November 2011 earnings statement, November 2011 Comcast Internet bill, and an undated blank check listing the property as his address.

¶ 28    On March 28, 2012, the bank filed a motion for the entry of an order approving the report of sale and distribution pursuant to section 15-1508 of the Illinois Code of Civil Procedure (735 ILCS 5/15-1508 (West 2010)).

¶ 29    On April 10, 2012, the bank filed a response to defendant's motion to reconsider, claiming that defendant's motion to reconsider "fails to establish any of the three bases for the granting of a motion to reconsider": (1) newly discovered evidence that was unavailable at the time of the motion to quash, (2) changes in the law, or (3) errors in the court's application of the law.

¶ 30    On May 24, 2012, defendant filed a reply in support of his motion to reconsider, claiming that (1) the trial court erroneously placed an unlawful burden on defendant, requiring him to show that he resided at the property; (2) the bank failed to comply with the statutory prerequisites for service by publication; and (3) the trial court, in ruling on defendant's motion to reconsider, should consider a new case, *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, which held that an affidavit was insufficient to justify service by publication because it failed to identify the individuals who attempted service on the defendant. *Brewer*, 2012 IL App (1st) 111213, ¶ 21.

¶ 31    On July 19, 2012, the trial court denied the motion to reconsider in a written order, finding that "plaintiff's service of process affidavit is not inconsistent with Cook County, Ill. Cir. Ct. R. 7.3" and current case law. The trial court stated that: "[Defendant's] only proof offered to support his position" challenging the bank's service by publication in defendant's motion to quash "consisted of two self-serving affidavits regarding his place of residence." The trial court did not mention either defendant's third affidavit or the documents, which were attached to his motion to reconsider.

¶ 32    On March 28, 2012, the bank filed a motion for an entry of order approving the report of sale and distribution and for an order of possession against defendant and River Mill Condominium Association. The bank was the highest bidder at the public auction, which occurred on March 9, 2012, and purchased the property for $113,600. On October 10, 2013, the trial court approved the sale and entered an order of possession. This appeal follows.

¶ 33                                              ANALYSIS

¶ 34    Defendant appeals the trial court's order confirming the sale of property in a mortgage foreclosure action brought by the bank. On appeal, defendant claims: (1) the trial court did not obtain personal jurisdiction over defendant by service by publication because plaintiff failed to meet the requirements of section 2-206(a) of the Illinois Code of Civil Procedure (735 ILCS 5/2-206(a) (West 2010)) and Rule 7.3 of the circuit court of Cook County (Cook Co. Cir. Ct. R. 7.3 (Oct. 1, 1996)) and (2) the trial court failed to properly consider defendant's affidavits when ruling on his motion to quash service by publication and motion to reconsider. For the following reasons, we reverse.

¶ 35                                          I. Jurisdiction

¶ 36    As a preliminary matter, we consider the bank's argument that this court lacks jurisdiction to review the trial court's denial of defendant's motion to quash service. The bank argues that since defendant's notice of appeal states that he is appealing the trial court's judgment dated October 10, 2013, this court's jurisdiction is limited to reviewing only that judgment. As noted, October 10, 2013, is the date that the trial court approved the sale of the property and entered an order of possession, and not the date the trial court denied defendant's motion to quash service.

¶ 37    Illinois Supreme Court Rule 303 (eff. May 30, 2008) states that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Filing a notice of appeal " 'is the jurisdictional step which initiates appellate review.' " *People v. Smith*, 228 Ill. 2d 95, 104 (2008) (quoting *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7 (1998)). "Unless there is a properly filed notice of appeal, the appellate court lacks jurisdiction over the matter and is obliged to dismiss the appeal." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011) (citing *Smith*, 228 Ill. 2d at 104). "A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal." *Pappas*, 242 Ill. 2d at 176 (citing *People v. Lewis*, 234 Ill. 2d 32, 37 (2009)).

¶ 38    The purpose of a notice of appeal " 'is to inform the prevailing party that the other party seeks review of the trial court's decision.' " *Pappas*, 242 Ill. 2d at 176 (quoting *Lewis*, 234 Ill. 2d at 37). "The notice of appeal ' "should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal." ' " *Pappas*, 242 Ill. 2d at 176 (quoting *Smith*, 228 Ill. 2d at 105, quoting *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 229 (1991)).

¶ 39    "Although a notice is jurisdictional, our supreme court has held that we must construe a notice liberally." *Filliung v. Adams*, 387 Ill. App. 3d 40, 49 (2008) (citing *Smith*, 228 Ill. 2d at 104). "Our supreme court has held that a reviewing court should find that a defect is not fatal to the appeal if: (1) a notice's defect is a defect in form rather than in substance; and (2) the defect has not prejudiced the opposing party." *Filliung*, 387 Ill. App. 3d at 49 (citing *Smith*, 228 Ill. 2d at 105).

¶ 40    "In addition to the exception for form defects, there is also an exception for rulings that were necessary steps to the judgment named in the notice [of appeal]." *Filliung*, 387 Ill. App. 3d at 49 (citing *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 436 (1979)). "In *Burtell*, our supreme court held that an unspecified judgment was reviewable if the specified judgment 'directly relates back to [it].' " *Filliung*, 387 Ill. App. 3d at 49 (quoting *Burtell*, 76 Ill. 2d at 434).

¶ 41    Defendant's notice of appeal is sufficient to confer jurisdiction on this court to review the trial court's denial of defendant's motion to quash service of process. While the notice of appeal states that the date of the judgment appealed is October 10, 2013, the notice of appeal also states that defendant is seeking the "reversal of entry of order confirming sale, reversal of judgment for foreclosure, *and reversal of order denying motion to quash service*." (Emphasis added.) Moreover, the denial of defendant's motion to quash service of process was a necessary step for the trial court's October 10, 2013, judgment approving the sale of defendant's property.

¶ 42    As a result, the notice of appeal adequately set out the judgments that defendant appeals and fairly informed the bank of the nature of the appeal.

¶ 43                            II. Service by Publication

¶ 44    Defendant argues that the trial court did not obtain personal jurisdiction over defendant because the bank failed to meet the statutory requirements for service by publication under section 2-206 of the Code of Civil Procedure (735 ILCS 5/2-206 (West 2010)) and local

rule 7.3 (Cook Co. Cir. Ct. R. 7.3 (Oct. 1, 1996)). The bank argues that it met the statutory requirements for service by publication.

¶ 45 We review *de novo* whether the trial court obtained personal jurisdiction. *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17 (citing *In re Detention of Hardin*, 238 Ill. 2d 33, 39 (2010)). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 46 Where " 'a court lacks *** personal jurisdiction over the parties, any order entered in the matter is void *ab initio* and, thus, may be attacked at any time.' " *In re Dar. C.*, 2011 IL 111083, ¶ 60 (quoting *In re M.W.*, 232 Ill. 2d 408, 414 (2009)); see also *Johnston v. City of Bloomington*, 77 Ill. 2d 108, 112 (1979) (where a court lacks personal jurisdiction, "the proceedings are a nullity and no rights are created by them and they may be declared void when collaterally attacked"). "When a defendant has not been served with process as required by law, the court has no jurisdiction over that defendant and a default judgment entered against him or her is void." *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 32 (2006) (citing *First Federal Savings & Loan Ass'n of Chicago v. Brown*, 74 Ill. App. 3d 901, 905 (1979), and *Bank of Ravenswood v. King*, 70 Ill. App. 3d 908, 913 (1979)).

¶ 47 "Personal jurisdiction may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction." *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 18 (citing *In re Marriage of Verdung*, 126 Ill. 2d 542, 547 (1989)). "Providing effective service is a means of protecting an individual's right to due process by allowing for proper notification of interested individuals and an opportunity to be heard." *In re Dar. C.*, 2011 IL 111083, ¶ 61 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). " 'Every defendant in an action filed against him in this State is entitled to receive the best possible notice of the pending suit and it is only where personal service of summons cannot be had, that substituted or constructive service may be permitted.' " *Nasolo*, 364 Ill. App. 3d at 31 (quoting *Bell Federal Savings & Loan Ass'n v. Horton*, 59 Ill. App. 3d 923, 927 (1978)).

¶ 48 Personal jurisdiction acquired by publication is only allowed in limited cases where personal service could not be achieved, and then, only after strict compliance with statutory requirements. *Bell Federal Savings & Loan Ass'n*, 59 Ill. App. 3d at 926. Section 2-206 of the Code of Civil Procedure allows service by publication in actions affecting property. 735 ILCS 5/2-206 (West 2010). Under section 2-206, the plaintiff must file an affidavit "showing" that the defendant "on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained." 735 ILCS 5/2-206(a) (West 2010). The Cook County circuit court has adopted a rule that elaborates on the requirement for the affidavit. Rule 7.3 provides in relevant part as follows:

> "Pursuant to 735 ILCS 5/2-206(a), due inquiry shall be made to find the defendant(s) prior to service of summons by publication. In mortgage foreclosure cases, all affidavits for service of summons by publication must be accompanied by a sworn affidavit by the individual(s) making such 'due inquiry' setting forth with particularity the action taken to demonstrate an honest and well directed effort to ascertain the whereabouts of the defendant(s) by inquiry as full as circumstances permit prior to placing any service of summons by publication." Cook Co. Cir. Ct. R. 7.3 (Oct. 1, 1996).

¶ 49    "Our courts have determined that these statutory prerequisites are not intended as *pro forma* or useless phrases requiring mere perfunctory performance but, on the contrary, require an honest and well-directed effort to ascertain the whereabouts of a defendant by inquiry as full as circumstances permit." *Bank of New York v. Unknown Heirs & Legatees*, 369 Ill. App. 3d 472, 476 (2006) (citing *Graham v. O'Connor*, 350 Ill. 36, 41 (1932), and *City of Chicago v. Leakas*, 6 Ill. App. 3d 20, 27 (1972)). "Where the efforts to comply with these statutory provisions have been casual, routine, or spiritless, service by publication is not justified." *Bank of New York*, 369 Ill. App. 3d at 476 (citing *Home State Savings Ass'n v. Powell*, 73 Ill. App. 3d 915, 917 (1979), and *Bell Federal Savings & Loan Ass'n*, 59 Ill. App. 3d at 927).

¶ 50    In the case at bar, the bank did not demonstrate a well-directed effort to ascertain the whereabouts of defendant by inquiry as full as the circumstances permitted. First, plaintiff's attempts to serve defendant at his residence were "casual, routine, [and] spiritless." *Bank of New York*, 369 Ill. App. 3d at 476. According to Wiebe's affidavit, plaintiff attempted to serve defendant at his residence three times: (1) Thursday, May 27, 2010, at 11:15 a.m.; (2) Friday, May 28, 2010, at 8:35 a.m.; and (3) Sunday, May 30, 2010, at 9:55 a.m. Each attempt took place within four days and during the same three-hour timeframe on a Memorial Day weekend. The bank neither attempted to serve defendant at another time of the day when defendant might more likely be at home nor demonstrated any attempt to ascertain defendant's work hours. The bank made no attempt to contact the condominium association to find defendant's whereabouts, nor attempted to ascertain his employment from their records or from reliable others. Each attempt of service was made during traditional working hours or during a holiday weekend. While the bank attempted to serve defendant once on a weekend, plaintiff made this attempt on a holiday weekend when travel is not uncommon. As a result, we cannot say that the three attempts to serve defendant at those times and on those dates demonstrate a well-directed effort to ascertain the whereabouts of defendant by inquiry "as full as circumstances permit." *Bank of New York*, 369 Ill. App. 3d at 476.

¶ 51    Moreover, Wiebe's affidavit failed to demonstrate that there was no reason to return to defendant's residence to attempt service again on a different day and at a different time. After the first attempt, Wiebe noted that defendant's residence was located in a "4 story multi unit secured building. Def in bell system ings [*sic*] disconnected phone," then noted that the "[u]nit still appears vacant." After the second attempt, Wiebe noted that "[t]his visit confirms to me the unit is vacant"; however, he did not state any facts that would lead to this conclusion. Finally, after the third visit, Wiebe stated that defendant's residence "is vacant, phone is disconnected, one neighbor says he heard he went back to his family in Poland." Wiebe then attached two pictures of the building where defendant's condo is located to the affidavit: (1) the first showed the interior of the condo building's lobby through glass doors and (2) the second showed the exterior of the building.

¶ 52    We cannot say that a vague statement about a "disconnected phone" demonstrates that defendant had vacated his residence and could not be served in person with further attempts. The statement is not clear whether it is a mobile phone, a landline, or one connected to an intercom system in defendant's building. Even if the statement was clear, we question how a disconnected landline demonstrates that defendant has vacated his residence. Inherently, mobile phones are not tied to one location, and intercom systems can malfunction. Moreover,

we acknowledge defendant's observation that "landline telephone usage has significantly decreased in the modern cell-phone era."

¶ 53     We also cannot say that a statement from an unidentified neighbor that "he heard [defendant] went back to his family in Poland" demonstrates that defendant vacated his residence and that the bank made inquiry to his whereabouts as full as the circumstances permitted. Not only was the "neighbor" unidentified, but no address was provided for him or her so we do not know how far away he or she lived from defendant's building or whether the neighbor lived in the building. The neighbor's knowledge of defendant's whereabouts was admittedly secondhand, and there is no indication in the record that Wiebe or the bank made any attempts to corroborate the neighbor's statement or confirm that defendant's family even lives in Poland.

¶ 54     Neither do the pictures attached to the affidavit demonstrate that defendant had vacated his residence. Photographs of a multiunit building's lobby and exterior do not demonstrate an inquiry into defendant's whereabouts as full as the circumstances permitted.

¶ 55     We acknowledge the bank's extensive records search as demonstrated by the Fertel affidavit, and that the law does not require a specific number of attempts or unduly exhaustive efforts to locate the whereabouts of a defendant. However, the bank searched only for "new" addresses, thereby confirming defendant's claim that he has not lived anywhere else for years.

¶ 56     Accordingly, service by publication was not justified, the trial court lacked personal jurisdiction over the defendant, and any order entered by the trial court is void *ab initio*.

¶ 57                               III. Defendant's Burden

¶ 58     The bank argues that only after the defendant "file[s] an affidavit showing that upon due inquiry he could have been found *** must the plaintiff show it conducted a due inquiry." In support of this argument, plaintiff cites *Household Finance Corp. III v. Volpert*, 227 Ill. App. 3d 453, 455 (1992), and *First Bank & Trust Co. of O'Fallon v. King*, 311 Ill. App. 3d 1053, 1057 (2000).

¶ 59     We do not find this argument persuasive. First, section 2-206 plainly requires the bank to file an affidavit "showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found" before service by publication is justified. 735 ILCS 5/2-206(a) (West 2010). Moreover, the statement the bank cites from *Volpert* concerns when a plaintiff must produce evidence to establish due inquiry. *Volpert*, 227 Ill. App. 3d at 455 ("A defendant may challenge such affidavit by filing an affidavit showing that upon due inquiry he could have been found. [Citation.] Upon defendant's challenge, plaintiff must produce evidence establishing due inquiry."). Finally, *King* is easily distinguishable from the case at bar as the defendant in *King* failed to file any affidavit showing that upon due inquiry she could have been found. *King*, 311 Ill. App. 3d at 1057. Although a defendant is not required to file affidavits in order for the trial court to find a plaintiff's affidavits insufficient, defendant in the present case did file affidavits showing that upon due inquiry he could have been found. Indeed, "[a] defendant may challenge a plaintiff's section 2-206(a) affidavit by filing an affidavit showing that upon due inquiry, he could have been found." *Bank of New York v. Unknown Heirs & Legatees*, 369 Ill. App. 3d 472, 476 (2006).

¶ 60                                   IV. Defendant's Affidavits

¶ 61        Even if a defendant must "file an affidavit showing that upon due inquiry he could have been found *** before the plaintiff [must] show it conducted a due inquiry," the defendant in the present case met this burden, and thus, the trial court erred in finding that all three of defendant's affidavits were self-serving.

¶ 62        We evaluate the trial court's decision as to the affidavits *de novo*. *People ex rel. Waller v. Harrison*, 348 Ill. App. 3d 976, 985 (2004) ("When the trial court rules on the legal sufficiency of an affidavit, we review *de novo* the trial court's ruling ***."). We are not persuaded by the bank's claim that this court should employ the manifest weight of the evidence standard. *Deutsche Bank National Trust Co.*, 2012 IL App (1st) 111213, ¶ 17.

¶ 63        "Findings of fact are reviewed under the manifest weight of the evidence standard." *Cyclonaire Corp. v. ISG Riverdale, Inc.*, 378 Ill. App. 3d 554, 559 (2007). "This deferential standard is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." *People v. McDonough*, 239 Ill. 2d 260, 266 (2010).

¶ 64        In the case at bar, we are reviewing only documentary evidence. "[W]here the evidence before a trial court consists of depositions, transcripts, or evidence otherwise documentary in nature, a reviewing court is not bound by the trial court's findings and may review the record *de novo*." *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009); *People ex rel. Waller*, 348 Ill. App. 3d at 985 ("Generally, the manifest weight of the evidence standard of review applies if the trial court heard courtroom testimony, but a *de novo* standard applies when the trial court heard no testimony and ruled solely on the basis of documentary evidence."). We are just as competent to review the documentary evidence as the trial court. *Addison Insurance Co.*, 232 Ill. 2d at 453 ("Without having heard live testimony, the trial court was in no superior position than any reviewing court to make findings, and so a more deferential standard of review is not warranted.").

¶ 65        In addition, appellate courts review legal questions *de novo* (*Ogden Chrysler Plymouth, Inc. v. Bower*, 348 Ill. App. 3d 944, 951 (2004)) and the sufficiency of an affidavit is a legal question. *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119, 128 (2003) ("[A] court's determination of whether an affidavit offered in connection with a motion for summary judgment complies with Rule 191 is a question of law subject to *de novo* review."). Therefore, our standard of review on appeal is *de novo*, which means that we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).


¶ 66                                   A. Defendant's First Affidavit

¶ 67        Defendant disputes the trial court's characterization of his first affidavit as "self-serving," claiming that it showed that the bank could have found him upon due inquiry. See *Bank of New York*, 369 Ill. App. 3d at 476.

¶ 68        Illinois Supreme Court Rule 191(a) provides in relevant part that "affidavits submitted in connection with a motion to contest jurisdiction over the person *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies

of all documents upon which the affiant relies; [and] shall not consist of conclusions but of facts admissible in evidence." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 69    In *Young v. Chicago Federal Savings & Loan Ass'n*, 180 Ill. App. 3d 280, 282-83 (1989), the defendant savings and loan association claimed that the plaintiff assignee failed to establish an assignment of a title policy where the savings and loan association's vice president mailed a copy of the title policy to the plaintiff. In support of the defendant's motion for summary judgment, the defendant attached an affidavit, which the appellate court found to be self-serving. *Young*, 180 Ill. App. 3d at 284. The affidavit stated that the savings and loan association's vice president " 'sent the Title Policy in question *** for informational purposes only.' " *Young*, 180 Ill. App. 3d at 284. The appellate court found that the affidavit "fail[ed] to set forth the facts surrounding the assignment transaction. *** [It] merely state[d] that the policy was sent for informational purposes, which is a self-serving conclusion." *Young*, 180 Ill. App. 3d at 284. The appellate court also noted that "[d]efendant's claim that the policy was sent for informational purposes only is not supported by the record." *Young*, 180 Ill. App. 3d at 284.

¶ 70    In contrast, in *Doria v. Village of Downers Grove*, 397 Ill. App. 3d 752, 755 (2009), the plaintiff argued on appeal that the affidavit of the defendant's traffic engineering manager violated Supreme Court Rule 191. The appellate court held that the following statements from the traffic engineering manger's affidavit established "his conclusion that the gravel lot was not intended for parking" (*Doria*, 397 Ill. App. 3d at 756) and, therefore, the affidavit was in compliance with Supreme Court Rule 191:

> "he was the traffic engineering manager for [the] defendant and that his job duties included 'determining the intended use of various property' within Downers Grove ***. [He] noted that the lot in question in this case had been unpaved for 'the past 20 years' and that defendant had never placed parking meters, 'public parking' signs, concrete parking bumpers, or painted yellow parking lines in the lot." *Doria*, 397 Ill. App. 3d at 754.

The appellate court stated that " '[i]f, from the document as a whole, it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, Rule 191 is satisfied.' " *Doria*, 397 Ill. App. 3d at 756 (quoting *Kugler v. Southmark Realty Partners III*, 309 Ill. App. 3d 790, 795 (1999)).

¶ 71    Moreover, in *Prudential Property & Casualty Insurance Co. v. Dickerson*, 202 Ill. App. 3d 180, 183 (1990), the defendant filed a motion to quash service of process and an affidavit in support. "In the affidavit, [the defendant] denied that he resided at the address where the service was made and averred that at the time of the alleged service, he resided at [a different address]." *Dickerson*, 202 Ill. App. 3d at 185. The appellate court found that "the appellant placed the validity of the substituted service in issue through his affidavit. Where such an affidavit stands unrebutted or uncontradicted, as here, it serves as a proper basis for quashing service of process." *Dickerson*, 202 Ill. App. 3d at 185.

¶ 72    In reviewing defendant's first affidavit, dated October 17, 2011, we conclude that it is more like the affidavit in *Doria* than the affidavit in *Young*. In the case at bar, defendant's first affidavit stated that he "resided at 1675 Mill Street Unit # 202, Des Plaines, Illinois 60616 *** continuously since [he] purchased the condominium in June 2007. Specifically, [he] resided at the Property at all times, on, before and after May 25, 2010." In *Doria*, the appellate court

stated that " '[i]f, from the document as a whole, it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, Rule 191 is satisfied.' " *Doria*, 397 Ill. App. 3d at 756 (quoting *Kugler*, 309 Ill. App. 3d at 795). Accordingly, it is clear that defendant has personal knowledge of his own residence and he could competently testify to his residence at trial. Although the traffic engineering manager's affidavit provided more detail than defendant's affidavit, more information was needed to show that the traffic engineering manager had personal knowledge that the gravel lot was not intended for parking. Thus, it is clear that defendant's affidavit is based on his own personal knowledge of his residence, which he can competently testify to in trial. *Burks Drywall, Inc. v. Washington Bank & Trust Co.*, 110 Ill. App. 3d 569, 576 (1982) ("[R]ule [191] is satisfied if from the document as a whole it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial.").

¶ 73       In contrast, the case at bar is distinct from *Young* where "[d]efendant's claim that the policy was sent for informational purposes only is not supported by the record." *Young*, 180 Ill. App. 3d at 284. Here, the record does not contradict defendant's claim that he resided at the property since the process server's attempts occurred over the Memorial Day weekend and within the same timeframe, namely, between 8:30 a.m. and 11:30 a.m. In addition, Fertel claims that he searched only for "new" addresses for defendant and could not find any, thereby corroborating defendant's affidavit that there was no other address for him.

¶ 74       Furthermore, it was not necessary for defendant to attach additional evidence to his affidavit to confirm his residence. In *Dickerson*, the appellant's affidavit "denied that he resided at the address where the service was made and averred that at the time of the alleged service, he resided at [a different address]." *Dickerson*, 202 Ill. App. 3d at 185. The appellate court found his affidavit to be a "proper basis for quashing service of process" because it "[stood] unrebutted or uncontradicted." *Dickerson*, 202 Ill. App. 3d at 185. Similarly, defendant's first affidavit stated that he resided continuously at the property when the process server attempted to serve him. In addition, the bank did not file an affidavit to contradict defendant's affidavits.

¶ 75       Thus, it was error for the trial court to disregard defendant's first affidavit as self-serving.

¶ 76                              B. Defendant's Second Affidavit

¶ 77       Defendant also disputes the trial court's characterization of his second affidavit as "self-serving." See *Bank of New York*, 369 Ill. App. 3d at 476. In reviewing defendant's second affidavit, we also conclude that it is more like the affidavit in *Doria* than the affidavit in *Young*. For instance, in *Doria*, the traffic engineering manager stated that "he was the traffic engineering manager for [the] defendant and that his job duties included 'determining the intended use of various property' within Downers Grove ***. [He] noted that the lot in question in this case had been unpaved for 'the past 20 years' and that defendant had never placed parking meters, 'public parking' signs, concrete parking bumpers, or painted yellow parking lines in the lot." *Doria*, 397 Ill. App. 3d at 754.

¶ 78       Similarly, defendant's second affidavit, dated December 5, 2011, made detailed statements to confirm his residence. For example, defendant stated that the process server could have served him at the property before or after working hours, during the week, and on weekends and that the process server would have found the property to be occupied if he had looked

inside because the property contained defendant's personal belongings and was his primary place of residence. Moreover, defendant specifically excluded holidays from the list of times he could have been found at the property. In addition, defendant's statement, that plaintiff would have found the property occupied if it had looked inside because it contained his personal belongings and was his primary place of residence, is a statement that defendant has personal knowledge of and can reasonably testify to during trial. *Doria*, 397 Ill. App. 3d at 756.

¶ 79 Unlike the affidavit in *Young* that provided no factual information (*Young*, 180 Ill. App. 3d at 284), defendant's second affidavit provided detailed information that satisfied Supreme Court Rule 191. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013) ("affidavits *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based"). Thus, the trial court erroneously disregarded defendant's second affidavit as self-serving.

¶ 80 We need not consider defendant's third affidavit on this appeal, since we conclude that the trial court erred in disregarding defendant's first two affidavits as self-serving and that defendant has shown that plaintiff could have found him upon due inquiry.

¶ 81                                                  CONCLUSION

¶ 82 In sum, (1) defendant's notice of appeal adequately sets out that it appeals the trial court's denial of defendant's motion to quash service by publication; (2) the trial court failed to obtain personal jurisdiction over defendant because plaintiff failed to meet the statutory prerequisites for service by publication under section 2-206; and (3) although defendant had the burden of showing he could have been found upon due inquiry, defendant met this burden and the trial court erred in disregarding defendant's affidavits, and service is quashed.

¶ 83 Reversed and remanded.